

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| SUMMONS | ALIAS - SUMMONS |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, ___CHANCERY___ DIVISION

No. 2013-CH-13737

Def. Address: Universal Tax Systems

R/A: CT Corporation System

208 S. LaSalle St., Suite 814, Chicago, IL 60604

D&B II ENTERPRISES, LLC
_____
(Name all parties)

v.

UNIVERSAL TAX SYSTEMS, INC.

## ○SUMMONS ⦿ALIAS SUMMONS

**To each Defendant:**

   YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

⦿ **Richard J. Daley Center, 50 W. Washington, Room** __802__ , **Chicago, Illinois 60602**

○ **District 2 - Skokie**
5600 Old Orchard Rd.
Skokie, IL 60077

○ **District 3 - Rolling Meadows**
2121 Euclid
Rolling Meadows, IL 60008

○ **District 4 - Maywood**
1500 Maybrook Ave.
Maywood, IL 60153

○ **District 5 - Bridgeview**
10220 S. 76th Ave.
Bridgeview, IL 60455

○ **District 6 - Markham**
16501 S. Kedzie Pkwy.
Markham, IL 60428

○ **Child Support**
28 North Clark St., Room 200
Chicago, Illinois 60602

**You must file within 30 days after service of this Summons, not counting the day of service.**
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

**To the officer:**

   This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: 56261

Name: DON M. DOWNING

Atty. for: D&B II ENTERPRISES, LLC

Address: 701 MARKET STREET, SUITE 800

City/State/Zip: ST. LOUIS, MO 63101

Telephone: 314-241-5620

WITNESS DOROTHY BROWN JUL 0 3 2013

_Dorothy Brown_
Clerk of Court

Date of service: 7/10/13
(To be inserted by officer on copy left with defendant or other person)

Service by Facsimile Transmission will be accepted at: _____
(Area Code)   (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| SUMMONS | ALIAS - SUMMONS |



*0 1 1 2 1 8 0 9 *

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, <u>CHANCERY</u> DIVISION

No. <u>2013-CH-13737</u>

Def. Address: Universal Tax Systems

D&B II ENTERPRISES, LLC

R/A: CT Corporation System

**(Name all parties)**

208 S. LaSalle St., Suite 814, Chicago, IL 60604

v.

UNIVERSAL TAX SYSTEMS, INC.

## ○ SUMMONS ◉ ALIAS SUMMONS

**To each Defendant:**

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

- ◉ Richard J. Daley Center, 50 W. Washington, Room <u>802</u>, Chicago, Illinois 60602

- ○ **District 2 - Skokie**
  5600 Old Orchard Rd.
  Skokie, IL 60077

- ○ **District 3 - Rolling Meadows**
  2121 Euclid
  Rolling Meadows, IL 60008

- ○ **District 4 - Maywood**
  1500 Maybrook Ave.
  Maywood, IL 60153

- ○ **District 5 - Bridgeview**
  10220 S. 76th Ave.
  Bridgeview, IL 60455

- ○ **District 6 - Markham**
  16501 S. Kedzie Pkwy.
  Markham, IL 60428

- ○ **Child Support**
  28 North Clark St., Room 200
  Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

**To the officer:**

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: <u>56261</u>

Name: <u>DON M. DOWNING</u>

Atty. for: <u>D&B II ENTERPRISES, LLC</u>

Address: <u>701 MARKET STREET, SUITE 800</u>

City/State/Zip: <u>ST. LOUIS, MO 63101</u>

Telephone: <u>314-241-5620</u>

WITNESS DOROTHY BROWN JUL 0 3 2013

<u>Dorothy Brown</u>
Clerk of Court

Date of service: _____
(To be inserted by officer on copy left with defendant or other person)

Service by Facsimile Transmission will be accepted at: _____

(Area Code)    (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

ELECTRONICALLY FILED
5/29/2013 2:40 PM
2013-CH-13737
CALENDAR: 05
PAGE 1 of 27
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| D&B II ENTERPRISES LLC d/b/a BAIN ACCOUNTING/TAX, on behalf of itself and all others similarly situated, ) ) ) ) | |
| Plaintiffs, ) | Case No. _____ |
| ) | **CLASS ACTION COMPLAINT** |
| v. ) | |
| ) | **JURY TRIAL DEMANDED** |
| UNIVERSAL TAX SYSTEMS, INC., ) d/b/a CCH SMALL FIRM SERVICES, ) a Virginia corporation, ) | |
| ) | |
| Defendant. ) | |

## CLASS ACTION COMPLAINT FOR MONEY DAMAGES

Plaintiff D&B II Enterprises LLC d/b/a Bain Accounting/Tax ("Plaintiff"), individually and on behalf of a class of all others similarly situated, through its attorneys, allege the following upon information and belief, except as to the allegations that pertain to itself, which are based on personal knowledge:

## NATURE OF THE ACTION

1. Plaintiff brings this action on its own behalf and as representative of a class of all individuals or businesses that purchased ATX 2012 professional tax software for use in preparing individual and business tax returns for the 2012 tax year (the "Class"), pursuant to 735 Ill. Comp. Stat. 5/2-801 *et seq*.

2. Plaintiff, on behalf of itself and the putative Class, seeks to recover damages for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq.*, against Defendant Universal Tax Systems, Inc. d/b/a CCH Small Firm Services ("Defendant" or "CCH SFS"), which marketed, distributed, and sold ATX 2012 professional tax software (the "Software").

3.      Plaintiff, on behalf of itself and the putative Class, seeks a refund of all monies paid for the purchase of the Software and related product packages, and all additional damages incurred as a result of Defendant's violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

## THE PARTIES

4.      Plaintiff D&B II Enterprises LLC d/b/a Bain Accounting/Tax is a Missouri limited liability company, with its principal place of business in Florissant, Missouri. Plaintiff purchased the Software for use in its business preparing personal and business tax returns for the 2012 tax year.

5.      Defendant is a Virginia corporation, with its principal place of business in Kennesaw, Georgia. Defendant develops and sells professional tax and accounting software and services, including the Software, and conducts business throughout the United States.

## JURISDICTION AND VENUE

6.      This Court has personal jurisdiction over Defendant pursuant to the forum selection clause contained within Paragraph 8.3 of the CCH Small Firm Services Standard Software License Agreement (the "Agreement"), attached hereto as Exhibit A. Jurisdiction is also proper under 735 Ill. Comp. Stat. 5/2-209 because Paragraph 8.3 of the Agreement further provides that it "will be treated as if executed and performed in Cook County, State of Illinois."

7.      Venue is proper in this Court pursuant to the forum selection clause contained in Paragraph 8.3 the Agreement. Venue is also proper under 735 Ill. Comp. Stat. 5/2-101 of the Illinois Code of Civil Procedure because Defendant is a nonresident of the State.

ELECTRONICALLY FILED
5/29/2013 2:40 PM
2013-CH-13737
PAGE 2 of 27

## FACTUAL BACKGROUND

8.      ATX is a business founded in 1992, which develops and sells professional tax preparation, accounting and tax research solutions, including software, to CPAs and tax professionals throughout the United States. ATX professional tax software is designed to assist with preparing and filing tax returns for individuals and businesses and has been sold on the market for over twenty years.

9.      ATX provides updated tax software packages on an annual basis to conform to then-existing tax laws, rules and regulations and to provide updated Internal Revenue Service forms. The updated software is intended to interface with prior software versions by carrying over prior year's data into the updated software.

10.     Wolters Kluwer, N.V. ("Wolters Kluwer") is a Netherlands company in the business of providing information, software and services to the legal, tax, finance and healthcare industries.

11.     In 1996, Wolters Kluwer acquired CCH, Inc. ("CCH").

12.     In 2006, CCH acquired the assets of ATX and formed CCH SFS to provide software products and services targeted to smaller tax and accounting practitioners, including the Software.

13.     Plaintiff used ATX tax and accounting software for multiple years prior to the release of the Software.

14.     On August 28, 2012, Defendant unveiled the Software, an updated version of the ATX tax software for use in preparing tax returns for the 2012 tax year.

15.     In a press release issued that day Defendant stated: "ATX 2012 delivers improved efficiency, expanded client customization options and a fresh new user interface. . . .

ELECTRONICALLY FILED
5/29/2013 2:40 PM
2013-CH-13737
PAGE 3 of 27

- 3 -

ATX 2012 features a number of enhancements which deliver improved functionality, making it possible for the tax professional to be more efficient when working on client returns."

16. The Software was released to consumers nationwide for the 2012 tax preparation season in the fall of 2012.

17. Consumers could purchase five different tax preparation software packages (the "Product Packages") offering various features, each of which contained and operated using the Software:

ELECTRONICALLY FILED
5/29/2013 2:40 PM
2013-CH-13737
PAGE 4 of 27

    a. ATX 1040 – provided software to complete federal individual returns and state individual returns for up to three states and free e-filing for 100 returns;

    b. ATX 1040 Office – provided software to complete federal and state individual returns, unlimited free e-filing, and tax research products;

    c. MAX® – provided software to complete federal and state individual and business returns, unlimited e-filing, software to prepare and e-file payroll forms including W-2s and 1099s, access to more than 1,700 state and local payroll compliance forms, and tax research products;

    d. Total Tax Office™ – provided all of the products and services in the MAX® tax preparation package, in addition to PaperlessPLUS™ workflow software and additional tax research products;

    e. Total Tax & Accounting Office™ – provided all of the products and services in the Total Tax Office™ tax preparation package, in addition to integrated accounting products such as the Client Accounting Suite with Payroll and the ATX Fixed Asset Manager™.

18.     When installing the Software contained in each of the Product Packages, users are required to click on a "pop-up" box regarding the Agreement.     Plaintiff clicked on the Agreement "pop-up" box.

19.     Paragraph 2.1.1 of the Agreement grants to the consumer "a limited, nontransferable, nonexclusive right and license to use . . . the Software . . . for the purpose of performing tax and/or accounting services for Clients."

20.     Paragraph 5.1 of the Agreement also provides that CCH SFS will provide updates to the Software, at its sole discretion, and will provide product support for the Software.

21.     In an effort to push out the Software and its subsequent updates quickly, Defendant did not spend sufficient time testing the Software prior to its release on the market.

22.     Contrary to its own publicity regarding the improvements in the Software, Defendant was aware that the Software had significant flaws that prevented it from properly operating at the time of its release and that it had insufficiently tested the Software's functionality.

23.     The August 28, 2012 press release did not reveal that the Software was defective and not functional or that its functionality had not been reasonably tested.

24.     The Agreement also did not disclose that the Software was defective and not functional or that its functionality had not been reasonably tested.

25.     Defendant induced Plaintiff and the putative Class to purchase the Software and Product Packages through its omission of the facts that the Software is defective and insufficiently tested.

26.     Consumers who purchased any of the Product Packages have experienced numerous problems preventing them from effectively and productively using the Software to

ELECTRONICALLY FILED
5/29/2013 2:40 PM
2013-CH-13737
PAGE 5 of 27

prepare client tax returns for the 2012 tax season. Problems with the Software include, but are not limited to:

ELECTRONICALLY FILED
5/29/2013 2:40 PM
2013-CH-13737
PAGE 6 of 27

   a. Extremely slow processing times, for example, users reported that merely signing onto the Software takes 5 minutes, opening a return takes up to 10 minutes, moving from one screen to another takes several minutes, and preparing a simple return takes far longer than is reasonable or required under prior versions of the software;

   b. Failure of returns from previous years to roll over into the new Software;

   c. Inability to complete complex business returns or anything more than a simple individual return;

   d. Inability to access necessary Internal Revenue Service forms;

   e. Unintended software shut downs and loss of inputted information;

   f. Program instability and sporadic crashing of entire computer systems;

   g. Errors in calculations;

   h. Lack of shared network functionality; and

   i. Slow and/or non-functioning printing.

27.    Problems with the Software are not dependent on the type of computer used, whether the user's computer is updated, or the nature or speed of the user's internet connection.

28.    Defendant was aware of these and other problems with the Software and that it had not properly tested the Software's functionality, but nevertheless released the Software to consumers in the fall of 2012.

29.    Defendant at no time prior to purchase by Plaintiff disclosed that the Software was defective and not functional, or had not been adequately tested, for the purpose of preparing client tax returns.

30.    Defendant maintains a staff of technical support representatives to field calls regarding problems with ATX products, including the Software. However, consumers who attempt to reach these technical support representatives to report problems with the Software or to request technical support are left on hold for many hours.

31.    As a result of the problems with the Software and failure to offer effective remedial support, Plaintiff was unable to prepare certain tax returns within a reasonable time or not at all for all or a portion of the 2012 tax season after expending considerable time and effort.

32.    Due to the problems with the Software and failure to offer effective remedial support, Plaintiff expended considerably more time and effort preparing returns, has been unable to complete returns for some clients, has lost clients, and has lost income and profits.

33.    As of the date of filing, Defendant has issued 15 software updates attempting to fix the problems with the Software. Although these updates have provided slight improvements in functionality, users continue to experience problems that impair their ability to efficiently and productively prepare client tax returns.

34.    Problems with the Software impaired Plaintiff's ability to complete client tax returns prior to the tax filing deadline, and Plaintiff had to file for extensions which were not necessary in prior years.

35.    Defendant failed to, at any time, disclose to Plaintiff and other purchasers of the Software that it was defective and not functional, or had not been adequately tested for functionality, for the purpose of preparing client tax returns.

ELECTRONICALLY FILED
5/29/2013 2:40 PM
2013-CH-13737
PAGE 7 of 27

- 7 -

36.     Plaintiff would not have purchased the Software had it known, and had Defendants not omitted the fact that, the Software was defective and would not be functional for performing client tax returns upon delivery or that its functionality had not been adequately tested.

37.     Defendant continues to offer the Software for sale, without any disclosure that it is defective and not functional for the purpose of preparing client returns.   As of the date of filing, the Software sold by Defendant for the 2012 tax year is still defective.

### CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this Class Action pursuant to Section 2-801 of the Illinois Code of Civil Procedure (735 Ill. Comp. Stat. 5/2-801), on behalf of itself and the following Class of similarly situated persons:

> All individuals or businesses that purchased CCH SFS's ATX 2012 professional tax software for use in preparing individual and business tax returns for the 2012 tax year.

39.     Excluded from the Class are Defendant, CCH and Wolters Kluwer; their officers, directors, agents or employees and their immediate family members; and the judicial officers assigned to this litigation and members of their staffs and immediate families.

40.     Upon information and belief, ATX products are used by more than 35,000 CPAs and other tax professionals nationwide, thus the proposed Class is believed to number in the thousands of persons.  Class members are easily identifiable through Defendant's records.

41.     The proposed Class is so numerous that joinder of all Class members is impracticable.

ELECTRONICALLY FILED
5/29/2013 2:40 PM
2013-CH-13737
PAGE 8 of 27

42.     There are questions of fact and law common to the Class which predominate over questions affecting only individual Class members. The questions of law and fact common to the Class arising from Defendant's actions include, without limitation, the following:

a.  whether the Software is defective;

b.  whether Defendant adequately tested the Software and subsequent updates prior to releasing them to consumers;

c.  whether Defendant failed to disclose to consumers and the public that the Software was defective and not functional for the purpose of preparing client tax returns or that the Software was not adequately tested for functionality prior to its release, including in the Agreement;

d.  whether Defendant omitted, suppressed or concealed material facts about the defective nature of the Software from consumers;

e.  whether Defendant intended that purchasers of the Software would rely on its statements in which material facts were concealed, suppressed or omitted;

f.  whether Defendant's conduct violated the Illinois Consumer Fraud and Deceptive Business Practices Act;

g.  whether Defendant's conduct was willful and intentional and done with evil motive or reckless indifference to the rights of others, such that punitive damages are appropriate; and

h.  interpretation of obligations, liability and defenses under the common Agreement provided to all Consumers.

43.     Plaintiff's claims are typical of the consumers in the putative Class because it purchased the Software for its marketed purpose of preparing tax returns for individuals and

ELECTRONICALLY FILED
5/29/2013 2:40 PM
2013-CH-13737
PAGE 9 of 27

businesses. Furthermore, Plaintiff is subject to the same Agreement applicable to all Class members, which calls for application of Illinois law to all claims.

44.      Plaintiff is an adequate representative of the Class because it is a member of the Class and its interests do not conflict with the interests of the members of the Class. The interests of the members of the Class will be fairly and adequately protected by Plaintiff and their counsel, who have extensive experience prosecuting complex class action litigation.

45.      A class action is the appropriate method for the fair and efficient adjudication of this controversy. It would be impracticable and undesirable for each member of the Class to bring a separate action. In addition, the presentation of separate actions by individual Class members creates the risk of inconsistent and varying adjudications, establishes incompatible standards of conduct for Defendant, and/or substantially impairs or impedes the ability of Class members to protect their interests. A single class action can determine, with judicial economy, the rights of all Class members.

46.      Class members will be easily determinable based on the records of Defendant.

47.      Class certification is also appropriate because Defendant has acted or refused to act on grounds generally applicable to the Class. The Class Action is based on Defendant's acts and omissions with respect to the Class as a whole, not on facts or law applicable only to the Plaintiff. All Class members were subject to the Agreement. Thus, all Class Members have the same legal right to and interest in relief for damages associated with the purchase of the Software.

ELECTRONICALLY FILED
5/29/2013 2:40 PM
2013-CH-13737
PAGE 10 of 27

## CLAIM FOR RELIEF

## COUNT I – VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

48.     Plaintiff incorporates by reference the allegations in all paragraphs 1 to 47 as though fully set forth in this paragraph.

49.     Plaintiff is a consumer pursuant to 815 Ill. Comp. Stat. 505/1(e) which purchased the Software for use in its business of preparing tax returns for clients, and not for resale.

50.     The Software constitutes merchandise pursuant to 815 Ill. Comp. Stat. 505/1 in that Plaintiff purchased an intangible license to use the Software.

51.     Defendant engaged in a deceptive act or practice pursuant to 815 Ill. Comp. Stat. 505/2 in that it concealed, suppressed, omitted, or otherwise failed to disclose material facts to Plaintiff, specifically that the Software was defective and not functional for, and was not adequately tested for functionality in, preparing client tax returns.

52.     The defective nature of the Software is a material fact because purchasers of the software, including Plaintiff, would not have purchased the software had they been informed that it would not work, or had not been reasonably tested, for the purpose of preparing client tax returns.

53.     Defendant intended that purchasers of the Software, including Plaintiff, would rely on its statements in which material facts were concealed, suppressed, or omitted, and purchase the Software despite the fact that it was defective and not functional for the purpose of preparing client tax returns.

54.     Defendant's concealment, suppression or omission of material facts occurred in the course of conduct involving trade or commerce in that Defendant markets and sells its product to consumers engaged in the business of preparing tax returns. Plaintiff purchased the

ELECTRONICALLY FILED
5/29/2013 2:40 PM
2013-CH-13737
PAGE 11 of 27

- 11 -

Software from Defendant on the open market when it could – and should – have disclosed that the Software was defective.

55.     Plaintiff is authorized to bring a private action under the Consumer Fraud and Deceptive Practices Act pursuant to 815 Ill. Comp. Stat. 505/10(a).

56.     Plaintiff has suffered and will suffer actual damages as a direct result of Defendant's concealment, suppression or omission of material facts, including, but not limited to:

   a. The price paid for a defective product that was worth less to consumers than the product represented by Defendant because it could not be effectively and efficiently used to prepare client tax returns;

   b. Lost profits for the 2012 tax season due to decreased efficiency, inability to meet client expectations and lost customers;

   c. Lost goodwill; and

   d. Future lost profits due to loss of clients.

57.     Plaintiff's damages were proximately caused by Defendant's concealment, suppression or omission of material facts because it purchased tax software from Defendant that was defective and could not be used for its intended purpose of preparing client tax returns. If Defendant would have disclosed to Plaintiff that the Software was defective and that they would not be able to properly and efficiently prepare tax returns, Plaintiff could and would have avoided economic injury by purchasing different tax software. Thus, Plaintiff was actually deceived by Defendant's concealment, suppression or omission of material facts regarding the functionality of the Software.

ELECTRONICALLY FILED
5/29/2013 2:40 PM
2013-CH-13737
PAGE 12 of 27

58.     Defendant's concealment, suppression of omission of material facts as alleged above constitutes an unfair or deceptive act or practice within the meaning of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq.*

59.     Defendant's conduct was willful and intentional and done with evil motive or reckless indifference to the rights of others.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant and in favor of Plaintiff and award the following relief:

(a)     Certification of the proposed Class;

(b)     Actual damages exceeding $50,000 including, but not limited to: the return of all purchase costs paid for the Software and Product Packages; lost profits for the 2012 tax season; lost goodwill and future lost profits due to loss of clients;

(c)     Costs to plaintiffs;

(d)     Punitive damages in an amount that is fair and reasonable, but will serve to deter Defendant Universal Tax Systems, Inc. d/b/a CCH Small Firm Services and others from like conduct in the future; and

(e)     Such other and further relief as the Court deems just, equitable and proper including reasonable attorney's fees pursuant to 815 Ill. Comp. Stat. 505/10a.

## JURY DEMAND

Plaintiff requests trial by jury on all matters that can be so tried.

ELECTRONICALLY FILED
5/29/2013 2:40 PM
2013-CH-13737
PAGE 13 of 27

Respectfully submitted,

GRAY, RITTER & GRAHAM, P.C.

By: /s/ Don M. Downing
      Don M. Downing #6184726
      Jason D. Sapp #6291948
      Attorneys for Plaintiff
      701 Market Street, Suite 800
      St. Louis, MO 63101-1826
      (314) 241-5620
      Facsimile: (314) 241-4140
      ddowning@grgpc.com
      jsapp@grgpc.com


      Service via email will be accepted at
      the above referenced email addresses.

ELECTRONICALLY FILED
5/29/2013 2:40 PM
2013-CH-13737
PAGE 14 of 27

# Exhibit A

# to Complaint

ELECTRONICALLY FILED
5/29/2013 2:40 PM
2013-CH-13737
PAGE 15 of 27

This CCH Small Firm Services Standard Software License Agreement (this "Agreement") is made by and between Universal Tax Systems, Inc. d/b/a CCH Small Firm Services, its successors, and assigns ("CCH SFS") and "Customer" (as defined below), and governs Customer's use of any CCH SFS software that is accompanied by an electronic copy of this Agreement. This Agreement can be viewed at CCH SFS' web site (www.cchsfs.com/legal/), at the time of installation, or within the software's menu. By installing and/or using the Software or by otherwise indicating acceptance (electronically or otherwise) of this Agreement, Customer acknowledges agreement to the terms set forth below.

1. 1.   **DEFINITIONS.** In addition to the terms defined elsewhere in this Agreement, the terms below will be defined as follows:

1.1.   "**Authorized User**" means an individual who is either, as applicable per the terms of the Order Form: (a) properly covered under a purchased User License, or (b) an employee of Customer who uses the Software on behalf of Customer as otherwise permitted hereunder and/or under the applicable Order Confirmation. An Authorized User must be a full-time or part-time employee (but may be a contract/temporary employee) working for Customer primarily at the Designated Office(s) for the purpose of assisting Customer in its day-to-day business activities (subject to the other terms and conditions of this Agreement, including, without limitation, subsection 2.3). An Authorized User does not acquire individual rights in the Software or Deliverables other than the right to use such Software on Customer's behalf and pursuant to the rights granted to Customer and subject to the terms and conditions herein.

1.2.   "**Client**" means each third party client of Customer that has entered into a direct agreement with Customer for tax and/or accounting services.

1.3.   "**Customer**" means the person or entity that is the registered end user of the Software, as specified on the Order Confirmation.

1.4.   "**Deliverables**" means all services and materials, and the related benefits, available from time-to-time from, and as determined in the discretion of, CCH SFS or its authorized affiliates for use in connection with the Software (including, but not limited to: product support, Updates, electronic filing, and access to the Online Account(s) of Web-based Applications).

1.5.   "**Designated Office(s)**" means the site(s), location(s), and/or address(es) for which Customer licenses the Software as identified on the Order Confirmation.

1.6.   "**Desktop Application**" means software that is available for installation and execution from a Customer-hosted computer.

1.7.   "**Fees**" means the fees payable by Customer to CCH SFS under the Order Confirmation and this Agreement for use of the Software and Deliverables.

1.8.   "**License**" means the right granted to Customer to use the Software as provided under subsection 2.1 of this Agreement in connection with the issuance of an Order Confirmation.

1.9.   "**Online Account**" means the authorized access into a Web-based Application as established by CCH SFS for use by any particular Authorized User, and includes the controls, permissions and data unique to such user.

1.10.   "**Online Account Access Information**" means the private access information (for example, username and password) used by each Authorized User of a Web-based Application to access his/her individual Online Account.

1.11.   "**Order Confirmation**" means a written order in a form approved by CCH SFS, or one of its authorized distributors, for Customer's acquisition of a License to the Software as sent to Customer by mail, fax and/or email. The Order Confirmation may contain additional details governing Customer's relationship with CCH SFS and Customer's use of the Software, but no negotiated terms will modify this Agreement unless signed by an officer of CCH SFS.

1.12.   "**Software**" means the particular software title(s) in object code form that are identified in the Order Confirmation(s) for Customer, including the files, databases, documentation, materials, modifications, revisions, optional features, enhancements, and Updates, if any.

1.13.   "**Updates**" means all minor revisions, patches, fixes, and other improvements (version upgrades excluded) provided by CCH SFS, in its sole discretion, for a particular version of the Software.

1.14.   "**User License**" means the rights granted by CCH SFS to a particular individual to use the Software, pursuant to the terms of this Agreement.

1.15.   "**Web-based Application**" means a software application that is hosted on servers operated and/or controlled by CCH SFS and available for use by Customer via the Internet. Certain terms and conditions within this Agreement may only apply to the use of Web-based Application versions of the Software, if so stated herein.

ELECTRONICALLY FILED
5/29/2013 2:40 PM
2013-CH-13737
PAGE 16 of 27

ELECTRONICALLY FILED
5/29/2013 2:40 PM
2013-CH-13737
PAGE 17 of 27

## 2. LICENSE, RESTRICTIONS & OWNERSHIP

2.1. **License.**

2.1.1. **Grant of License.** Subject to the terms and conditions of this Agreement, CCH SFS grants to Customer a limited, nontransferable, nonexclusive right and license to use, and to permit Authorized Users to use, the Software solely for internal use and for the purpose of performing tax and/or accounting services for Clients without any further right to use, sublicense, distribute, transfer or transmit the Software. End users of the Software must be Authorized Users for which customer has purchased a User License, which has been established and documented in an Order Confirmation. The Software may only be used by Authorized Users who primarily work out of a Designated Office. Customer may obtain a license for additional locations only if included in the Order Confirmation and payment of the applicable Fees has been made in advance of any use by Authorized Users who primarily work out of such locations.

2.1.2. **Desktop Applications.** The License for use of a Desktop Application version of the Software must be registered to, and is restricted to, a particular Designated Office. Customer must pay the appropriate Fees to establish and license additional Authorized Users and/or additional Designated Offices to use the Software elsewhere.

2.1.3. **Web-based Applications.** The License for use of a Web-based Application version of the Software must be registered to a particular Designated Office. A Web-based Application may be accessed from any location by the Authorized Users working out of the Designated Office.

2.1.4. **Condition of License.** The License granted to Customer under this Agreement is conditioned upon Customer's compliance with the terms of this Agreement and the Order Confirmation, including, but not limited to, the timely payment of all applicable Fees.

2.2. **Back-up Copies.** Customer may make a reasonable number of copies of the Desktop Application version of the Software solely for back-up purposes. All copies of the Software, including (without limitation) translations, compilations and partial copies are governed by this Agreement.

2.3. **Restrictions.**

2.3.1. **General.** Without a separate written agreement with CCH SFS to the contrary, Customer must not do, or attempt to do, or permit others to do, any of the following: (a) copy, modify or create derivative works of the Software in any way, except as permitted in subsection 2.2; (b) remove or modify CCH SFS' copyright notices, trademark, logo, legend or other notice of ownership from any originals or copies of the Software; (c) view, read, modify, reverse compile, reverse assemble, disassemble or print the Software's source code, object code, components, or other runtime objects or files distributed with the Software; (d) otherwise reverse engineer, modify or copy the look and feel, functionality or user interface of any portion of the Software; (e) defeat, disable or circumvent any protection mechanism related to the Software, (f) rent, lease, distribute (or redistribute), provide or otherwise make available the Software, in any form, to any third party (including in any service bureau or similar environment); (g) share the use or the access of the Software with other practitioners (including outsourcers performing work for Customer) who are not Authorized Users in Customer's practice, even if Customer shares office space or equipment; (h) share Customer's Online Account or Online Account Access Information with third parties; (i) link to, 'frame,' or 'mirror' a Web-based Application or any portion thereof; (j) use the Software to process the data of clients of a third party (whether on an outsourcing, service bureau, or other basis); (k) install a copy of the Desktop Application version of the Software at an office location not registered and/or licensed as a Designated Office with CCH SFS; (l) publish, distribute (or redistribute) or sell any document retrieved through the Software (even if in the public domain) to any individual or entity outside of Customer's own firm, except for documents prepared for Customer's Clients within the scope of the normal and intended use of the Software; (m) employ remote programs, remote desktops, Virtual Private Networks (VPN), Virtual Network Computing (VNC) or any other remote means to access the Software outside of the Designated Office; (n) use, install, or make available the Desktop Application versions of the Software, in whole or in part, through a wide area network including but not limited to World Wide Web sites, intranets, or Application Service Providers (ASP); or (o) use or attempt to use the Software in conjunction with offering tax refund related bank products of any financial institution not authorized by CCH SFS.

2.3.2. **Bank Products.** Customer may be able to offer "Bank Products" (e.g., refund transfers) to taxpayers whose tax returns are prepared with the Software, if Customer is enrolled in CCH SFS' "Bank Products Program." CCH SFS only permits the use of authorized Bank Product processors and authorized methods in connection with the offering of Bank Products for returns prepared with the Software. Consequently, Customer agrees only to use authorized processors and methods to transmit Bank Product requests in connection with the Software. Customer agrees that if it violates this restriction then Customer will pay CCH SFS as liquidated damages, and not as a penalty, an amount equal to thirty dollars ($30) times the number of Bank Products processed through unauthorized processors and/or methods. All Bank Product applications transmitted through the Software will be subject to the applicable fees and other terms and conditions as set forth in the enrollment process.

2.3.3. **Network Restrictions.** In addition, Customer will not violate or attempt to violate the security of CCH SFS' networks or servers, including (x) accessing data not intended for Customer or log into a server or account which Customer is not authorized to access; (y) attempting to probe, scan or test the vulnerability of a system or network or to breach security or authentication measures without proper written request and authorization; or (z) attempting to interfere with service to any user, host or network, including by means of submitting a virus, overloading, flooding, spamming, mail bombing or crashing.

ELECTRONICALLY FILED
5/29/2013 2:40 PM
2013-CH-13737
PAGE 18 of 27

2.4.    **Unauthorized Acquisition.** CCH SFS prohibits anyone from using the Software or Deliverables or any other software from CCH SFS that has been improperly obtained and/or accessed. For purposes of illustration, but not limitation, examples include software or Deliverables that are: (a) acquired from an unauthorized reseller or distributor; (b) pirated, cracked or hacked, including through the use of Online Account Access Information established for use by another individual; (c) acquired with the intent or for the purpose to use in a manner that is illegal, fraudulent, in violation of this Agreement or otherwise outside the normal, stated and/or reasonably understood purpose of the Software; or (d) acquired with the use of false or inaccurate statements and/or information (e.g., using contact information, EFIN, or payment information that is false; falsely declaring the total number of end users; or falsely claiming ownership of multiple business locations with the intent of obtaining a multi-office discount).

2.5.    **Reservation of Rights & Ownership of Developed Materials.** CCH SFS, and its affiliates, and any applicable licensors, retain all intellectual property and other rights in the Software (including, without limitation, all patent, copyright, trade secret, trade name, trademark, and other proprietary rights related to the Software and Deliverables, which are protected under United States intellectual property laws and International Treaty Provisions). Unauthorized use of any of the Software will result in cancellation of this Agreement as well as possible civil damages and criminal penalties. Customer is not permitted to use the trade or service marks of CCH SFS or any of its affiliates in Customer's announcements, advertising or other materials unless expressly agreed to in writing by an authorized representative of CCH SFS. Customer acknowledges and agrees that CCH SFS' and its affiliates and any applicable licensors' retention of contractual and intellectual property rights is an essential part of this Agreement. CCH SFS and its affiliates and licensors (as applicable) will own and Customer hereby assigns to CCH SFS all rights in: (i) any copy, translation, modification, adaptation or derivative work of the Software and/or Deliverables, including any improvement or development thereof, whether or not developed by or for the Customer; and (ii) any suggestions, ideas, enhancement requests, feedback, or recommendations provided by or on behalf of Customer.

2.6.    **U.S. GOVERNMENT RESTRICTED RIGHTS.** The Software is provided with RESTRICTED RIGHTS. Use, duplication or disclosure of the Software by the United States Government is subject to restrictions as set forth in FAR 12.212 or DFARS 227.7202-1(a), 227.7202-3(a) and 227.7202-4 (1995) and, to the extent required under U.S. federal law, the minimum restricted rights as set out in FAR 52.227-19 (DEC 2007) or FAR 52.227-14 (DEC 2007). To the extent any Technical Data is provided pursuant to the Agreement, such data is protected per FAR 12.211 and DFARS 227.7102-2 and to the extent explicitly required by the U.S. Government, is subject to limited rights as set out in DFARS 252.227.7015 (NOV 1995) and DFARS 252.227-7037 (SEPT 1999). In the event that any of the above referenced agency regulations are modified or superseded, the subsequent equivalent regulation will apply. The name of the manufacturer is Universal Tax Systems, Inc. d/b/a CCH Small Firm Services, 225 Chastain Meadows Ct. NW, Suite 200, Kennesaw, GA 30144. If Customer is an agency, department, or other entity of any State government, the United States Government or any other public entity or funded in whole or in part by the United States Government, then Customer hereby agrees to protect the Software from public disclosure and to consider the Software exempt from any statute, law, regulation, or code, including any Sunshine Act, Public Records Act, Freedom of Information Act, or equivalent, which permits public access and/or reproduction or use of the Software.

## 3. FEES AND PAYMENT

3.1.    **Fees.** Customer must pay CCH SFS the Fees set forth in the Order Confirmation. Additional Fees may apply, which Customer agrees to pay when due, for setup, transactions, additional Support, use of certain Deliverables or for certain Web-based Applications. The Order Confirmation, published product descriptions or other documents that may be provided in connection with the Deliverables will contain information concerning the applicable Fees. CCH SFS may assess a late payment Fee equal to the lesser of one and one-half percent (1½%) of the unpaid amount or the highest interest rate allowed by applicable law for each succeeding thirty (30) day period or portion thereof in which Fees are not paid in full.

3.2.    **Taxes.** All Fees are exclusive of any taxes, assessments or duties that may be assessed upon the Software, License or Deliverables granted under this Agreement, including, without limitation, on third-party fees disclosed in the Order Forms, sales, use, excise, value added, personal property, electronic/internet commerce, export, import and withholding taxes. Customer is responsible for directly paying any such taxes assessed against it, and Customer will promptly reimburse CCH SFS for any such taxes payable or collectable by CCH SFS. Such taxes do not include taxes based upon CCH SFS' income. Taxes are calculated on product plus additional charges, where applicable. Taxes include state and local sales or use taxes and are based upon the Customer's deliver-to address, and/or Designated Office location(s). Tax exemption certificates, if any, must be submitted at the time of order.

## 4. TERM & TERMINATION

4.1.    **Term.** Subject to the terms of subsection 4.2 and 4.3, the License granted under this Agreement to use a Desktop Application version of the Software will be perpetual. The License to use a Web-based Application version of the Software will terminate on November 15, 2013. Access to the Deliverables associated with software that is directly used for Federal and/or State tax return preparation/filing will expire on November 15, 2013. Access to the Deliverables associated with all other Desktop Application versions of the Software will expire one (1) year from

ELECTRONICALLY FILED
5/29/2013 2:40 PM
2013-CH-13737
PAGE 19 of 27

the date of the initial shipment of the Software. This Agreement will automatically expire and terminate with the expiration of the Deliverables. The following sections will survive the expiration of this Agreement under this subsection 4.1: subsections 5.3, 7.3, 7.4 and 7.5, and Sections 1, 2, 4, 6, 8, 9 and 10.

4.2.    **Termination of Agreement for Cause.**

    4.2.1.   This Agreement, including both the License and Deliverables provided hereunder, may be terminated by CCH SFS for cause, in its sole discretion, immediately upon notice to Customer if Customer materially breaches any terms or conditions of this Agreement, or if any Fees remain unpaid for a period of thirty (30) days after due.

    4.2.2.   Upon termination under this subsection 4.2, the License(s) granted hereunder will terminate and Customer must cease all further use of the Software and Deliverables and at CCH SFS' direction, either return to CCH SFS, or confirm to CCH SFS as destroyed, all copies of the Software. Upon request of CCH SFS, Customer must certify in writing to CCH SFS that it has destroyed or returned all copies of the Software and that Customer and its Authorized Users are no longer using any applicable Software previously licensed hereunder.

    4.2.3.   Termination of this Agreement pursuant to this subsection 4.2 will not require payment of a refund to Customer and will not affect: (a) Customer's obligation to pay any Fees due, or (b) any remedies available to CCH SFS by law or equity.

    4.2.4.   The following sections will survive termination of this Agreement under this subsection 4.2: subsections 2.3, 2.5, 2.6, 4.2, 7.3, 7.4 and 7.5, and Sections 1, 8, 9 and 10. The survival provision in subsection 4.1 will not apply to termination of this Agreement under this subsection 4.2.

4.3.    **Suspension of Access.** In addition to any other suspension or termination rights of CCH SFS pursuant to this Agreement, CCH SFS may suspend or terminate Customer's use of the Software or the Deliverables without notice, as, in CCH SFS' judgment, is reasonably necessary in order to: (a) prevent damages to, or degradation of the integrity of, CCH SFS' software, network, or other systems; (b) comply with any law, regulation, court order, or other governmental request or order which requires immediate action; or (c) otherwise protect CCH SFS from potential legal liability or harm to its business. CCH SFS will use commercially reasonable efforts to notify Customer of the reason(s) for such suspension or termination action as soon as reasonably practicable. In the event of a suspension, CCH SFS will promptly restore use of the Software to Customer as soon as the event giving rise to the suspension has been resolved as determined in CCH SFS' discretion. Nothing contained in this Agreement will be construed to limit CCH SFS' actions or remedies or act as a waiver of CCH SFS' rights in any way with respect to any of the foregoing activities.

4.4.    **Renewals.** Customer may be able to renew certain software titles (e.g., Trial Balance, Fixed Asset Manager, Client Accounting Suite, and Payroll) by paying a renewal maintenance fee. After renewing, Customer will obtain an upgraded version of the renewed software, along with another year of access to the Deliverables. Notwithstanding anything to the contrary in subsection 4.1, access to the Deliverables that have been renewed will expire on the anniversary of the shipment date of the version of the Software that was purchased immediately prior to the first version of the Software purchased as a renewal. No credit will be provided for the time that the Deliverables were not utilized if Customer chooses to renew the Software at a time later than the expiration of the Deliverables. The option to renew the Software is not guaranteed and is subject to change at the discretion of CCH SFS. In the case of a renewal, any updated license agreement that is included with the new version of the software will govern. CCH SFS, in its discretion and for any reason, may decide not to renew Customer's access to the Software and Deliverables; in which case, CCH will make reasonable effort to notify Customer of this decision prior to the expiration of Customer's then-current term.

## 5. UPDATES & SUPPORT

5.1.    **Updates.** CCH SFS may, from time to time, provide Customer with Updates to the Software. However, supplying Updates will be at CCH SFS' discretion and CCH SFS will have no obligation, express or implied, to provide Updates. Customer agrees to install all available Updates to the Software and acknowledges that Customer's failure to do so is at Customer's sole risk. CCH SFS reserves the right to charge additional license Fees for any optional and ancillary features and/or functionality it may market in connection with the Software.

5.2.    **Support.** CCH SFS may also offer product support for the Software remotely from CCH SFS' offices. Support shall not include, and CCH SFS will not provide, any tax, legal or other professional or expert advice of any kind, including, but not limited to: the appropriate handling of tax and accounting issues, or otherwise. Support for prior year versions of the Software may be more limited and is only available in CCH SFS' discretion. CCH SFS, at its sole discretion, may choose to only support the most recent version of any particular Software title. CCH SFS may also choose not to provide support if the Software is installed on hardware that does not meet CCH SFS' standard published system requirements, as in effect from time to time. Customer agrees that Customer and/or Customer's agents or employees will not knowingly place more than one call at any given time to CCH SFS' telephone support number(s) regarding the same situation, support question, issue or matter. CCH SFS reserves the right to terminate Customer's access to product support if it determines that Customer is committing acts that are disruptive to the service (e.g., placing multiple calls at one time; insulting support representatives; providing Clients with access information to CCH SFS customer support lines, etc.).

5.3.    **Data Retention.** CCH SFS will use reasonable efforts to retain the data that Customer has properly submitted to CCH SFS' online servers for at least one year following the year in which Customer submitted any such data.

CCH SFS will then maintain the data in accordance with its internal business practices and applicable laws. It is Customer's responsibility to backup onto Customer's own local system all data and records that Customer submits to CCH SFS.

5.4. **Miscellaneous.** Updates and support are Deliverables and are available to Customer for the term specified in subsection 4.1. CCH SFS reserves the right to modify its Update and support policies, procedures and related Fees from time to time.

## 6. CUSTOMER'S PROFESSIONAL RESPONSIBILITY AND WARRANTIES

6.1. **Professional Responsibility.** Customer understands, agrees and acknowledges that:

6.1.1. Use of the Software does not relieve Customer of responsibility for the preparation, content, accuracy, and review of tax returns or any other work product generated by Customer while using the Software;

6.1.2. Customer will review any computations made by the Software and satisfy itself that those computations are correct;

6.1.3. Customer will neither inquire nor rely upon CCH SFS for tax, legal or other professional or expert advice of any kind;

6.1.4. Customer will retrieve in a timely manner any electronic communications made available to Customer by CCH SFS (for example, electronic filing transaction data such as acknowledgements and e-mail messages in Customer's mailbox); and

6.1.5. Customer is fully and solely responsible for: (a) selection of adequate and appropriate versions of the Software to satisfy Customer's business needs and achieve Customer's intended results; (b) use of the Software; (c) all results obtained from the Software; (d) selecting, obtaining and maintaining all hardware, software, Internet service, and other equipment and utilities needed for access to and use of the Software, and for all costs associated therewith; and (e) selection, use of, and results obtained from any other programs, computer equipment or services used with the Software.

6.2. **Customer's Representations.** Customer represents, warrants and covenants that:

6.2.1. Customer has full power and authority to enter into this Agreement and to perform its obligations hereunder, and that this Agreement has been duly authorized, executed and delivered by Customer and constitutes a valid and binding obligation of Customer;

6.2.2. Customer is licensing the Software solely for Customer's own use and/or to provide tax and/or accounting services to Customer's direct Clients;

6.2.3. Customer will not use the Software to create a product, service or database that competes with CCH SFS, the Software or Deliverables;

6.2.4. Customer is responsible for complying with all rules, regulations and procedures of local, state, federal and foreign authorities applicable to Customer and its business, including, without limitation, all rules, regulations and procedures of the Internal Revenue Service;

6.2.5. Customer will protect all usernames, passwords and other access information, will promptly notify CCH SFS of any unauthorized use of such information or other breach of security of which Customer has knowledge, will be responsible for any harm resulting from Customer's failure to properly carry out the foregoing responsibilities, will assist in preventing recurrence of any security breach that results from Customer's acts or omissions, and will otherwise cooperate fully in any proceedings undertaken to protect the rights of CCH SFS;

6.2.6. Customer has all rights necessary to legally transmit any data or information to CCH SFS' networks or servers, and the possession, storage and use by CCH SFS of such data or information will not infringe, misappropriate or otherwise violate the intellectual property rights, or other rights, of any third party;

6.2.7. Customer will be solely responsible for compliance with this Agreement by the Authorized Users and, to the extent applicable, all Clients;

6.2.8. Customer is not prohibited by a third-party agreement from entering into the terms and conditions of this Agreement; and

6.2.9. Customer will not otherwise violate the rights of any third party while using the Software.

6.3. **Electronic Filing Representations.** The following electronic filing terms and conditions will apply to electronic filing services and are in addition to all other terms and conditions contained within this Agreement:

6.3.1. Customer agrees that Customer will comply with all State and/or Federal electronic filing and direct deposit rules and regulations as will be in effect from time to time.

6.3.2. Customer acknowledges and agrees that all EFINs used by Customer and provided to CCH SFS are registered to Customer or else are registered to an Authorized User of the Software who is using the Software on behalf of Customer.

6.3.3. Customer acknowledges and agrees that Customer is solely responsible for any direct deposit option which Customer elects in accordance with IRS Form 8453 (as well as any successor(s) thereto) and that Customer is solely responsible for providing all complete, correct and necessary information directly to the IRS with respect to the same.

6.3.4. Customer acknowledges and agrees that taxing authorities may not accept all returns due to certain circumstances that are beyond CCH SFS' reasonable control. Customer agrees to review the electronic filing and acknowledgment report and status after submission to confirm the file was accepted. For jurisdictions that do not accept electronic remittance, Customer must submit returns using standard paper methods.

ELECTRONICALLY FILED
5/29/2013 2:40 PM
2013-CH-13737
PAGE 20 of 27

ELECTRONICALLY FILED
5/29/2013 2:40 PM
2013-CH-13737
PAGE 21 of 27

6.4.    **Indemnification.** Customer agrees to indemnify and hold harmless CCH SFS, its employees, officers, directors and affiliates against any and all liability (including damages, recoveries, deficiencies, interest, penalties and reasonable attorney's fees) to third parties (including, but not limited to, any Clients, the United States government and state taxing authorities) relating to: (a) Customer's breach of any of its obligations, representations and/or warranties under this Agreement; or (b) except to the extent of claims for which CCH SFS is liable under <u>Section 7</u> below, Customer's use of the Software, the Deliverables and/or third party software.

## 7. CCH SFS WARRANTIES

7.1.    **CCH SFS' General Warranties.** CCH SFS represents and warrants that: (a) it has title to the Software or the right to grant Customer the rights granted hereunder; (b) the Software and Deliverables do not violate any third party's United States patent, copyright or trade secret rights; and (c) CCH SFS has not knowingly inserted any virus or similar device to erase data. Customer's sole and exclusive recourse and remedy – and CCH SFS' sole, exclusive and entire liability – for a breach of items (a) and (b) shall be the exercise of Customer's indemnity rights under <u>subsection 7.2</u> below. For a breach of item (c) Customer's sole and exclusive recourse and remedy – and CCH SFS' sole, exclusive and entire liability – shall be to terminate the Agreement and obtain a refund of the Fees paid for the directly affected Software less an allocation for use made by Customer prior to the breach.

7.2.    **Indemnification by CCH SFS.** Customer's sole and exclusive recourse and remedy – and CCH SFS' sole, exclusive and entire liability – for breach of <u>subsection 7.1</u> by CCH SFS will be the exercise of Customer's indemnity rights under this <u>subsection 7.2</u>.

    7.2.1.    Subject to the other terms and conditions set forth herein, CCH SFS agrees to defend Customer at CCH SFS' sole cost and indemnify Customer (by paying for damages finally awarded against Customer or any amounts payable in any settlement entered into in compliance with this Agreement) from and against any claims, demands, actions or proceedings by any third parties alleging that the Software hereunder infringes or violates any third party's United States patent, copyright or trade secret rights; provided that: (i) CCH SFS is notified promptly in writing of the claim; (ii) CCH SFS controls the defense, settlement and approval of the claim; and (iii) Customer reasonably cooperates, assists and gives all necessary authority to CCH SFS and reasonably required information in connection with the defense or settlement of the claim.

    7.2.2.    CCH SFS' indemnity obligations under <u>subsection 7.2.1</u> hereof will not apply if and to the extent that they arise from or relate to: (i) the use of the Software in any form or substance other than as provided by CCH SFS hereunder and as required to be used by Customer hereunder; (ii) the modification of the Software by Customer or any third party not authorized in writing by CCH SFS to do so; (iii) the use of the Software in combination with any intellectual property, services, reports, documentation, hardware, software, data or technology not supplied by CCH SFS or approved by CCH SFS in writing; or (iv) any data or information, or other intellectual property, supplied by Customer or an Authorized User or third party (other than CCH SFS).

    7.2.3.    If the Software becomes, or in CCH SFS' opinion, is likely to become, the subject of a third party claim covered by CCH SFS' indemnification obligations under <u>subsection 7.2.1</u>, then CCH SFS may, in its sole discretion and at its sole cost and expense: (i) procure for Customer the right to continue using such Software; (ii) modify the infringing portion of the Software so as to render it non-infringing but still appropriate for its intended use under this Agreement; or (iii) replace the infringing portion of the Software with non-infringing items with substantially similar functionality. If CCH SFS reasonably determines that none of the foregoing is commercially practicable, then CCH SFS may elect to terminate this Agreement and grant Customer a refund of the Fees paid for the affected Software less allocation for use made by Customer prior to the termination. This <u>Section 7.2.3</u> states CCH SFS' entire liability and the sole and exclusive remedy of Customer, its employees, officers, directors and affiliates and any Authorized User for any claim of infringement or other violation of any intellectual property rights.

7.3.    **Limited Warranty.** EXCEPT AS STATED IN <u>SUBSECTION 7.1</u>, THE SOFTWARE, THE DELIVERABLES AND ANY THIRD PARTY SOFTWARE ARE PROVIDED "AS IS" WITHOUT WARRANTY OF ANY KIND, EITHER EXPRESS OR IMPLIED. CCH SFS DISCLAIMS AND EXCLUDES ANY AND ALL OTHER WARRANTIES INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OF TITLE, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. IRRESPECTIVE OF ANY COURSE OF DEALING OR PERFORMANCE, CUSTOM OR USAGE OF TRADE. CUSTOMER BEARS THE ENTIRE RISK AS TO THE QUALITY AND PERFORMANCE OF THE SOFTWARE AND THE DELIVERABLES. CCH SFS DOES NOT WARRANT THAT USE OR OPERATION OF THE SOFTWARE OR DELIVERABLES WILL BE UNINTERRUPTED, THAT THEIR USE OR OPERATION WILL BE ERROR OR DEFECT FREE, THAT ALL APPLICATION DEFECTS WILL BE CORRECTED, OR THAT THE SOFTWARE WILL PROPERLY OPERATE ON ANY SPECIFIC OPERATING SYSTEM OR COMPUTER HARDWARE OR CONFIGURATIONS OR BEFORE/AFTER ANY SPECIFIC DATE OR TIME PERIOD. CUSTOMER WILL BE SOLELY RESPONSIBLE FOR THE SELECTION, USE AND SUITABILITY OF THE SOFTWARE AND CCH SFS WILL HAVE NO LIABILITY THEREFORE. NO EMPLOYEE OR AGENT OF CCH SFS OR ANY OF ITS AFFILIATES IS AUTHORIZED TO MAKE ANY STATEMENT THAT ADDS TO OR AMENDS ANY OF THE WARRANTIES OR LIMITATIONS CONTAINED IN THIS AGREEMENT.

7.4.    **Limitation of Liability and Damages.** NEITHER PARTY (AND, IN THE CASE OF CCH SFS, ITS AFFILIATES, CONSULTANTS OR LICENSORS) WILL HAVE ANY LIABILITY TO THE OTHER OR ANY THIRD PARTY

ELECTRONICALLY FILED
5/29/2013 2:40 PM
2013-CH-13737
PAGE 22 of 27

(INCLUDING, WITHOUT LIMITATION, ANY CONTRACTOR, AGENT, AFFILIATE OR CLIENT OF CUSTOMER) FOR ANY LOSS OF PROFITS, SALES, BUSINESS, DATA, OR OTHER INCIDENTAL, CONSEQUENTIAL, OR SPECIAL LOSS OR DAMAGE, INCLUDING EXEMPLARY AND PUNITIVE DAMAGES, OF ANY KIND OR NATURE RESULTING FROM OR ARISING OUT OF THIS AGREEMENT, THE SOFTWARE, AND/OR DELIVERABLES. THE FOREGOING LIMITATION OF LIABILITY SHALL NOT APPLY TO ANY VIOLATION OF EITHER PARTY'S INTELLECTUAL PROPERTY RIGHTS AS SET FORTH HEREIN. THE TOTAL LIABILITY OF CCH SFS AND ITS AFFILIATES AND ANY CONSULTANTS OR LICENSORS) TO CUSTOMER OR ANY THIRD PARTY RESULTING FROM OR ARISING OUT OF THIS AGREEMENT, THE SOFTWARE, AND/OR DELIVERABLES FOR ANY AND ALL CLAIMS OR TYPES OF DAMAGES SHALL NOT EXCEED THE TOTAL FEES FOR THE SOFTWARE PAID HEREUNDER BY CUSTOMER IN THE TWELVE-MONTH PERIOD PRECEDING THE DATE SUCH CLAIM OR CAUSE OF ACTION FIRST AROSE. CCH SFS is not an insurer with regard to performance of the Software or Deliverables. Customer agrees to assume the risk for: (a) all liabilities disclaimed by CCH SFS contained herein, and (b) all alleged damages in excess of the amount of the limited remedy provided hereunder. The allocations of liability in this subsection 7.4 represent the agreed, bargained-for understanding of the parties and CCH SFS' compensation hereunder reflects such allocations. THE LIMITATION OF LIABILITY AND TYPES OF DAMAGES STATED IN THIS AGREEMENT ARE INTENDED BY THE PARTIES TO APPLY REGARDLESS OF THE FORM OF LAWSUIT OR CLAIM A PARTY MAY BRING, WHETHER IN TORT, CONTRACT OR OTHERWISE, AND REGARDLESS OF WHETHER ANY LIMITED REMEDY PROVIDED FOR IN THIS AGREEMENT FAILS OF ITS ESSENTIAL PURPOSE.

7.5.    **Internet Connectivity; Disclaimer.** CCH SFS (either itself or through a third party) may make certain Deliverables available for access via the Internet. Customer shall provide, at Customer's own expense, all necessary hardware, applications and Internet connectivity necessary to access such Deliverables. Customer acknowledges that the Internet is known to be unpredictable in performance and may, from time to time, impede access to the Deliverables or performance hereunder. Customer agrees that CCH SFS is not in any way responsible for any interference with Customer's use of or access to the Deliverables arising from or attributable to the Internet and Customer waives any and all claims against CCH SFS in connection therewith.

7.6.    **Third Party Products.** Some Deliverables and/or other products used in connection with the Software may be provided by third-parties, as will be indicated when and if applicable. Such Deliverables and/or products are provided "as is" without warranty of any kind by CCH. All rights and obligations with respect to said Deliverables and/or products will be governed exclusively by the terms and conditions of agreements (if any) provided by licensors of said third-party Deliverables and/or products, and Customer hereby releases CCH from all liability and responsibility with respect thereto. Any such third-party product shall be identified in the applicable Order Form.

## 8. DISPUTE RESOLUTION

8.1.    **Licensing Audit.** Upon CCH SFS' written request, Customer must furnish CCH SFS with a signed certificate verifying that Customer's version of the Software is being used: (a) pursuant to the terms of this Agreement, (b) only at the Designated Office(s), and (c) only by Authorized Users. At its expense, CCH SFS may, itself or by third party agents, audit Customer's compliance with the requirements of this Agreement. Any such audit will be conducted not more than once per calendar year and during regular business hours at Customer's facilities and will not unreasonably interfere with Customer's business activities. During any such audit CCH SFS and its designees may have access to Customer's computer systems and records and conduct forensic reviews thereof and may interview any of Customer's current and former employees and contractors. If CCH SFS determines that Customer has not paid appropriate license or other Fees for use of the Software or Deliverables at any location, Customer will be invoiced for such license and other Fees, plus an additional 1.5% monthly interest rate, or the maximum lawful amount, of the unpaid Fees (dating back to the time when such Fees should have been paid). Customer shall pay (directly or by reimbursing CCH SFS) the reasonable cost of the audit if the audit detects unpaid Fees that exceed five percent (5%) of the total Fees actually paid for the period so audited. This right shall not limit or preclude any additional remedies available to CCH SFS provided by law or equity.

8.2.    **Time Limit on Claims.** Except for collection actions which may be brought by CCH SFS at any time and without limiting claims for indemnification hereunder, no action arising out of any claimed breach of this Agreement or transactions under this Agreement may be brought by either party more than one (1) year after the event which gives rise to the specific cause of action.

8.3.    **Jurisdiction.** The parties hereto, and each of them, acknowledge that they have had the opportunity to be represented by independent counsel of their choice prior to using the Software after viewing this Agreement. Customer agrees that this Agreement will be interpreted and enforced according to the laws of the State of Illinois, without any regard to conflicts of law rules, and will be treated as if executed and performed in Cook County, State of Illinois. All disputes arising out of or relating to this Agreement and/or Deliverables will be instituted and prosecuted exclusively in Cook County, State of Illinois, with Customer specifically consenting to extraterritorial service of process for that purpose. The parties agree that the United Nations Convention on Contracts for the International Sale of Goods will not apply in any respect to this Agreement or to the parties in general.

8.4.    **Waiver of Jury Trial.** EACH PARTY, TO THE EXTENT PERMITTED BY LAW, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ITS RIGHT TO A TRIAL BY JURY IN ANY ACTION OR LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT AND THE TRANSACTIONS IT CONTEMPLATES.

8.5.  **Enforcement.** Customer will pay all of CCH SFS' attorneys' fees and costs and expenses incurred in the enforcement of any of the provisions of this Agreement.

8.6.  **Remedies.** Customer acknowledges that the Software, Deliverables and other proprietary information of CCH SFS are unique and that, in the event of any breach of this Agreement by Customer, CCH SFS may not have an adequate remedy at law, and will be entitled to seek enforcement of its rights hereunder by an action for damages and/or specific performance and/or injunctive or other equitable relief without the necessity of proving actual damages. Unless specifically stated otherwise elsewhere in this Agreement, the various rights, options, elections, powers and remedies of a party or parties to this Agreement will be construed as cumulative and no one of them exclusive of any others or of any other legal or equitable remedy, which said party or parties might otherwise have in the event of breach or default in the terms hereof.

8.7.  **Notices.** All notices, demands, consents or requests given by a party hereto will be in writing and sent by delivery via a third party, nationally recognized overnight express mail service, addressed to either Customer's billing address or CCH Small Firm Services, Attn: Legal Department, 225 Chastain Meadows Ct. NW. Suite 200, Kennesaw, GA 30144.

8.8.  **Enforceability.** In the event that any of the provisions, or portions thereof, of this Agreement is held to be unenforceable or invalid by any court of competent jurisdiction, the validity and enforceability of the remaining provisions and portions thereof of this Agreement will not be affected thereby.

8.9.  **Waiver.** CCH SFS' failure or delay to require compliance with the conditions of this Agreement, or to exercise any right provided herein, will not be deemed a waiver by CCH SFS of such condition or right. No failure or delay in exercising any right or remedy or requiring the satisfaction of any condition under this Agreement, and no course of dealing between the parties, will operate as a waiver or legally bar CCH SFS from enforcing any right, remedy or condition. A waiver made in writing on one occasion is effective only in that instance and only for the purpose that it is given and is not to be construed as a waiver on any future occasion.

## 9. CONFIDENTIALITY
9.1.  **Nonuse and Nondisclosure.** Customer and CCH SFS agree that during the term hereof and for four (4) years after termination or expiration of this Agreement, or for such longer period as may be required by applicable law or regulation (e.g., IRS regulations), all information furnished or disclosed to the other pursuant to this Agreement, including, without limitation, the terms of Customer's Order Confirmation, proprietary information within the Software, Customer's data and any discussions between the parties regarding other potential business relationships (the "Confidential Information"), will be held in strict confidence by the other party, and will not be used, made available or disclosed to any third party without the other party's prior written consent. Each party also agrees to restrict dissemination of such Confidential Information to only those persons in their respective organizations or third-party consultants or service providers who have a need to know such Confidential Information to perform the obligations under this Agreement. Each party will be deemed to have fulfilled its confidentiality obligations under this Section 9 if it affords the other party's Confidential Information at least the same degree of care it takes in protecting its own confidential information from unauthorized disclosure (but in no event using less than a reasonable degree of care).

9.2.  **Personally Identifiable Information.** Notwithstanding anything in subsection 9.1 to the contrary, Customer authorizes CCH SFS to transmit the personally identifiable information ("PII") of the taxpayer Clients of Customer as submitted to CCH SFS by Customer to taxing authorities, as well as to third-party service providers that CCH SFS may use in conjunction with the services it renders hereunder, subject to applicable laws and regulations, including Internal Revenue Code Section 7216.

9.3.  **Exceptions.** Notwithstanding the above restrictions, neither party will have any obligation for any nonuse or nondisclosure of Confidential Information which (a) is now or subsequently enters the public domain through means other than disclosure of a party hereto in breach of the terms of this Agreement; (b) is lawfully obtained from a third party without an obligation of confidentiality; (c) is independently developed by such party or is already lawfully in the possession of the receiving party free of any obligation of confidence to the other party; or (d) is required to be disclosed by law, by court order or by order of any government or administrative tribunal having jurisdiction over the recipient, provided that the recipient must, to the extent legally permitted, notify the disclosing party of any such requirement prior to disclosure (except where the disclosing party is being investigated for possible criminal activity by a governmental agency and such agency specifically requests that prior disclosure not be made by the recipient) in order to afford such other party an opportunity to seek a protective order to prevent or limit disclosure, and the recipient will reasonably cooperate with the disclosing party's efforts to obtain such protective order.

9.4.  **Expiration.** Upon termination or expiration of this Agreement, both parties agree to destroy all copies of written Confidential Information, including, without limitation, all electronically stored copies. However, each party will be entitled to retain copies of the other party's Confidential Information preserved or recorded or saved automatically to standard back-up or archival systems. Moreover, CCH SFS may retain a copy of such Confidential Information for the sole purpose of and to the extent necessary for CCH SFS to comply with applicable legal or regulatory requirements, and/or reasonable internal archival policies and requirements (with such Confidential Information otherwise remaining subject to the terms and conditions of this Section 9). The disclosing party will retain all

ELECTRONICALLY FILED
5/29/2013 2:40 PM
2013-CH-13737
PAGE 23 of 27

proprietary rights to the information it discloses hereunder, regardless of the expiration of the obligations under this <u>Section 9</u>.

**10.    MISCELLANEOUS**

10.1.   **Entire Agreement.** This Agreement, along with the Order Confirmation and any other terms otherwise published by CCH SFS outside of this Agreement that do not adversely impact Customer, constitutes the entire and exclusive agreement, understanding and representation, express or implied, between Customer and CCH SFS with respect to the Software and Deliverables to be furnished hereunder; it is the final expression of that agreement and understanding, and it supersedes all prior agreements and communications between the parties (including all oral and written proposals). In the event of a conflict, this Agreement will control, then the Order Confirmation, and then any other terms provided by CCH SFS, unless CCH SFS explicitly acknowledges and upholds the particular conflict in such other document. Oral statements made about the Software and/or Deliverables will not constitute warranties, will not be relied on by Customer, and will not be binding or enforceable. No supplement, modification or amendment of this Agreement will be binding unless executed in writing by CCH SFS and Customer after reasonable opportunity to accept or reject such supplement, modification or amendment, provided that CCH SFS may supplement this Agreement if such supplement is a clarification or is otherwise not adverse to Customer. CCH SFS reserves the right to revise this Agreement from time to time in its discretion, provided that any such revisions shall not be effective with respect to Customer until the commencement of Customer's next renewal term, if any.

10.2.   **Evaluation Copies of Software.** If Customer is installing an evaluation version of any of the Software, then this Agreement will govern Customer's use except as modified by this <u>subsection 10.2</u>. Software licensed to Customer for evaluation purposes will only be used at one authorized location for a limited period of time. Certain functionality of such software may be disabled or restricted. Commercial use of such software is not authorized, is outside the scope of this Agreement, and is a violation of U.S. and international copyright laws. Customer is required to remove any evaluation or demonstration copies of the Software from any and all Customer equipment upon the conclusion of the evaluation or demonstration and to destroy or promptly return such copies to CCH SFS. If Customer wishes to use the Software for commercial purposes then Customer must purchase a license from CCH SFS. The following sections of this Agreement will not apply to Customer's use of an evaluation version of the Software: <u>subsections 2.1, 2.2, 7.1</u> and <u>7.2</u>, and <u>Sections 3, 4</u> and <u>5</u>.

10.3.   **Force Majeure.** Neither party hereto shall be held liable for the failure to perform any obligation, or for the delay in performing any obligation, arising out of or connected with this Agreement if such failure or delay results from or is contributed to by any cause beyond the reasonable control of such party including, but not limited to, failures or delays caused by the act or omission of any governmental authority, fire, flood, failures of third party suppliers, acts or omissions of carriers, transmitters, providers of telecommunications or Internet services, vandals, hackers or other event beyond such party's reasonable control. A delay under this <u>subsection 10.3</u> must be corrected within thirty (30) days of the cessation of the event causing such delay.

10.4.   **Contact Information.** Customer agrees to always provide CCH SFS with Customer's most current contact information, including Customer's address, phone number, fax number and e-mail address. Customer also agrees to provide CCH SFS with Customer's most current EFIN, as well as proof of the EFIN holder's name and address, as requested by CCH SFS, if Customer will be using the Software to electronically file tax returns.

10.5.   **Export Restrictions.** Customer is advised that the Software and any Deliverables are subject to the U.S. Export Administration Regulations and diversion contrary to U.S. law and regulation is prohibited. Customer agrees to not directly or indirectly export, import or transmit the Software or Deliverables to any country, end user or for any end use that is prohibited by any applicable U.S. regulation or statute (including but not limited to those countries embargoed from time to time by the U.S. government or the United Nations). Additionally, Customer agrees to not directly or indirectly export, import, transmit or use the Software or Deliverables contrary to the laws or regulations of any other governmental entity that has jurisdiction over such export, import, transmission or use. Customer represents and agrees that neither the United States Bureau of Industry and Export Administration nor any other governmental agency has issued sanctions against Customer or otherwise suspended, revoked or denied Customer's export privileges.

10.6.   **Modification/Replacement of Software/Deliverables.** CCH SFS reserves the right, in its sole discretion and without first consulting with Customer, to discontinue or modify the Software or Deliverables for any reason. However, if the Software is discontinued during the term of the license granted hereunder or the terms set forth in the Order Form, then CCH SFS will, in its discretion, either: (a) continue to provide Support for the discontinued product for the remainder of the then current License term; (b) provide a pro-rata refund of the license Fees paid for the discontinued product; or (c) replace the discontinued product for the duration of the License term with a successor product having equal or greater functionality (with CCH SFS reserving the right to charge extra Fees for any such new product). If Customer purchases Software that is discontinued prior to its shipment to Customer, CCH SFS will provide Customer a refund of the Fees paid toward such Software.

10.7.   **No Third Party Beneficiary.** No third party is intended to be or shall be a third party beneficiary of any provision under this Agreement. CCH SFS and Customer shall be the only parties entitled to enforce the rights set out in this Agreement.

ELECTRONICALLY FILED
5/29/2013 2:40 PM
2013-CH-13737
PAGE 24 of 27

10.8. **Data Transmission Notification.** The Software or Deliverables may transmit information about an Authorized User's computer setup (for example, system configuration, type of Internet connectivity, RAM, CPU, operating system, browser version) to CCH SFS' servers. CCH SFS may use this information for internal quality assurance and software error checking, as well as to assist users with multiple offices. This data will be treated as Confidential Information.

10.9. **Assignment.** Neither this Agreement, the License granted hereunder nor the Software or any Deliverable may be sublicensed, assigned, sold, hypothecated, or transferred by Customer without the prior written consent of CCH SFS. Any attempt to sublicense, assign or transfer any of the rights, duties or obligations under this Agreement without the prior written consent of CCH SFS will automatically terminate the rights granted hereunder and will be void and of no effect. Customer agrees that CCH SFS' retention of these contractual and other legal rights is an essential part of this Agreement.

10.10. **Delivery.** Delivery of the Software to Customer will take place when it becomes available to the entire client base of CCH SFS provided that CCH SFS, in its discretion, may suspend sending releases and other Updates, or deny access to other Deliverables, if there is an unpaid invoice for such Software that is outstanding. Deliveries are f.o.b. point of shipment. Customer acknowledges that the Software and all Updates thereof are pre-written software of general application. All Deliverables will be delivered to Customer remotely via interstate means from CCH SFS' Georgia offices.

Master 07/12

ELECTRONICALLY FILED
5/29/2013 2:40 PM
2013-CH-13737
PAGE 25 of 27

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

D&B II ENTERPRISES LLC d/b/a )
BAIN ACCOUNTING/TAX, on behalf of )
itself and all others similarly situated, )
                               )
       Plaintiffs, )
                               )
v.                                 )    Case No. _____
                                )
UNIVERSAL TAX SYSTEMS, INC., )
d/b/a CCH SMALL FIRM SERVICES, )
a Virginia corporation, )
                                )
       Defendant. )

ELECTRONICALLY FILED
5/29/2013 2:40 PM
2013-CH-13737
PAGE 26 of 27

STATE OF MISSOURI     )
                       ) SS:
COUNTY OF ST. LOUIS    )

### AFFIDAVIT OF DAMAGES PURSUANT TO SUPREME COURT RULE 222(B)

Pursuant to Supreme Court Rule 222 (B), counsel for the above-named plaintiff certifies that plaintiff seeks money damages on behalf of itself and the putative class in excess of Fifty Thousand Dollars ($50,000).

By: _____
              Jason D. Sapp
              Attorney for Plaintiffs

Signed and sworn to before me this 29ᵗʰ day of May, 2013.

_____ Notary Public
My commission expires: _10-20-16_

JACQUELINE L. STATZ
Notary Public - Notary Seal
STATE OF MISSOURI
St. Louis County
My Commission Expires: Oct. 20, 2016
Commission # 12379504

- 15 -

1910 - No Fee Paid
1919 - Fee Paid
Jury Demand                    CCG N067-10M-6/09/04 (                              )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

D&B Ⅱ ENTERPRISES LLC d/b/a BAIN ACCOUNTING/TAX, on behalf of itself and
all others similarly situated,

Plaintiffs,

v.

UNIVERSAL TAX SYSTEMS, INC., d/b/a CCH SMALL FIRM SERVICES, a
Virginia corporation,

Defendant.

No. _____

ELECTRONICALLY FILED
5/29/2013 2:40 PM
2013-CH-13731
PAGE 27 of 27

## JURY DEMAND

The undersigned demands a jury trial.

_____
(Signature)

Dated: May 29_____, 2013____

Atty. No.: 6291948
Name: Jason D. Sapp
Atty. for: Plaintiffs
Address: 701 Market Street, Suite 800
City/State/Zip: St. Louis, MO 63021
Telephone: 314-241-5620

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS