UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| D&B II ENTERPRISES, LLC d/b/a BAIN ACCOUNTING/TAX, on behalf of itself and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>UNIVERSAL TAX SYSTEMS, INC., d/b/a CCH SMALL FIRM SERVICES, a Virginia corporation,<br><br>    Defendant. | No. 13 C 5702<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

Plaintiffs D&B II Enterprises, LLC, d/b/a BAIN ACCOUNTING/TAX, on behalf of itself and all others similarly situated ("Plaintiff" or "D&B") have filed a complaint against Defendant Universal Tax Systems, Inc. d/b/a CCH Small Firm Services, a Virginia Corporation ("Defendant" or "Universal"), alleging violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1 *et seq.* (Count I), fraudulent omission (Count II), fraudulent concealment (Count III), and breach of the implied warranty of merchantability (Count IV). The matter was heard on February 3, 2015. Currently before the Court is Defendant's motion for summary judgment. For the following reasons, Defendant's motion for summary judgment is granted on Counts I, II, and III and denied on Count IV.

This dispute arises from D&B's purchase of ATX 2012 tax software from Universal. D&B, owned and founded by Bradley Bain, had a long history of purchasing ATX-brand tax software from Universal, spanning from tax year 1990 to tax year 2012, to use in preparing tax returns for customers. Throughout its twenty-two year long relationship, D&B had not had any major issues with ATX software purchased from Universal. Unsurprisingly, D&B renewed its subscription with

1

Universal in 2012 and purchased ATX 2012 software. D&B was not informed of any changes in the ATX software directly by Universal or through marketing materials.

On August 16, 2012, prior to agreeing to purchase ATX 2012, D&B recalls communicating with Universal on at least three separate occasions. First, Universal sales representative Ms. Parul Patel emailed an "ATX RENEWAL reminder" asking whether D&B would be "renew[ing] [D&B's] account" at a discount. Mr. Bain, then, called Ms. Patel on the same day and informed her that D&B wanted to purchase the ATX 2012 software. Third, Mr. Bain received an email from Universal attaching the Deferred Payment Agreement ("Payment Agreement") that stated that D&B could purchase the ATX 2012 Software. After briefly reviewing the Payment Agreement and an Authorization to Charge Credit Card for two or three minutes, Mr. Bain electronically executed the Payment Agreement, thereby agreeing to purchase the ATX 2012 software and providing Universal authorization to bill D&B's credit account.

In November or December 2012, Universal sent D&B the ATX 2012 software in the mail, along with a "Getting Started Guide." Shortly thereafter, in December 2012, D&B's technology consultant, E-Frame, began installing the ATX 2012 software. In order to install the ATX 2012 software, D&B's technology consultant was required to accept an agreement, described as the CCH Small Firm Services Standard License Agreement ("License Agreement"), by clicking "Yes" on the bottom of a box. The box displayed at least a portion of the License Agreement and contained a scroll bar running vertically along its right side. D&B's technology consultant, on behalf of D&B, clicked the "Yes" button on the bottom of the webpage and completed installation of the ATX 2012 software. D&B testified that the ATX 2012 software crashed for the first time when D&B "tried to open it up" after installation in December 2012, and that the software crashed on a near-daily basis after that. D&B, as well as its computer consultants, reached out to Universal's technical service representatives with complaints about the ATX 2012 software. Amongst other issues, D&B complained to Universal's technical service representatives about extremely slow processing, data

transfer problems, inability to complete complex business returns, constant crashes and shutdowns, errors in calculations, misprints, missing forms, and lost productivity.

Initially, Universal told D&B that the problems were being caused by D&B's hardware, but eventually conceded that D&B's computer was not causing the issue. Universal's technical service representatives reassured D&B that the issues could, and would, be fixed by forthcoming upgrades. D&B believed in these technicians' expertise and relied on these statements in installing the upgrades and continuing to use the ATX system. In total, Universal issued approximately twenty different updates and corrections to the ATX 2012 software program, which D&B installed in reliance on these representations. D&B believed that the ATX 2012 software was capable of being (and would be) fixed if they followed the advice given by Universal's technical service representatives.

D&B was not alone in facing difficulties. Numerous ATX 2012 users had similar issues, some of which were shared on Universal's community board, and relied on Universal's assurances. Multiple customers had contacted Universal for a refund of the money paid for the ATX 2012 software, but were refused. As Universal attempted to remedy a failing system, hoping to fix its issues with the ATX 2012 software and salvage its business relationships with customers, the tax season moved forward. D&B, feeling it was too late in the season to switch to a new program and relying on Universal's assurances that the ATX 2012 software would soon be fixed, did not return or seek a refund for the ATX 2012 software.

When D&B purchased and installed ATX 2012, D&B did not know, and Universal did not inform its customers, that the ATX 2012 software was built on a new platform. Universal also did not disclose that the ATX 2012 software, which is now known to have been defective, had problems that were not fixable during the 2012 tax season. Universal did not fail to make such disclosures at the time it sold ATX 2012 or when it was working to fix issues because of its intent to conceal valuable information to induce customers to purchase defective software or to harm its long-time customers. Rather, Universal did not tell customers that the ATX 2012 software was defective or unfixable

because it did not know or believe that the product was defective at the time it was sold, or even shortly thereafter. Universal also did not believe the ATX 2012 software was unfixable. There is no evidence that Universal knew that ATX 2012 was defective and D&B cannot sustain a claim for fraud.

To the contrary, Universal had maintained a strong business relationship with D&B for over twenty years and was interested in continuing this relationship. Universal made numerous attempts to assist D&B and fix the issues it was having with the software. Beyond its relationship with D&B, Universal also had a reputation to maintain in the larger market. Universal attempted to save its own reputation by also assisting other customers by issuing numerous upgrades and working to correct issues with its software which, I find, it believed was possible. Because of its largely positive twenty-two year working relationship with Universal and Universal's repeated issuances of upgrades to D&B that it indicated would fix the ATX 2012 software, D&B was reasonable to rely on Universal's assurances.

The problem for Universal, then, is that in making these assurances, it undertook a new obligation, which it failed to complete, when it unsuccessfully attempted to fix the issues with the ATX software on multiple occasions. D&B, as well as other customers, continued to experience difficulties with the ATX 2012 software. These difficulties did result in damages for D&B. D&B contends that the Payment Agreement, which contains no limitations on warranties, is the operative agreement governing the purchase of the ATX 2012 software. Universal, on the other hand, argues that D&B clicked "Yes" and accepted the terms of the License Agreement, which provides that the ATX 2012 software is provided on an "as is" basis and disclaims all warranties, limiting D&B's damages to the total fees paid for the software.

Even a finding that the License Agreement, rather than the Payment Agreement, was the operative contract that governs the purchase of the ATX 2012 cannot protect Universal from liability for its failure to fulfill the new promise it made to D&B that Universal would fix the ATX 2012

software. Universal made those assurances to avoid refunding the purchase price of the ATX 2012 software and to retain and repair its business relationship with its customers. D&B did reasonably rely on those assurances which were made, in large part, to benefit Universal. Universal cannot now disclaim warranties and limit damages to the purchase price when, rather than refunding D&B at the outset of its difficulties, it went outside of the scope of the original agreement for the purchase of ATX 2012 to salvage its business relationships by attempting to fix its defective software.

Defendant's Motion for Summary Judgment is granted as to Counts I, II, and III and denied as to Count IV.

ENTER:

James B. Zagel
United States District Judge

DATE: June 26, 2015